UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY BONNELL,

        Plaintiff,

                                     CASE NO. 2:07–CV-15444

   v.                              JUDGE DENISE PAGE HOOD

                                     MAGISTRATE JUDGE PAUL KOMIVES

DAVE BURNETT AND JOE
SCOTT,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT (docket #11)

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          1.    *First Amendment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          2.    *RLUIPA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          3.    *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

\*       \*       \*       \*       \*

I.     RECOMMENDATION: The Court should deny defendants' motion for summary judgment.

II.    REPORT:

A.    *Background*

       Plaintiff Jeremy Bonnell, a state prisoner proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on December 21, 2007.  Defendants are former Correctional Facility Administration Special Activities Coordinator Dave Burnett and Macomb Correctional Facility Assistant Deputy Warden Joe Scott.  Plaintiff filed an amended complaint on March 6, 2008.

1

In his amended complaint, plaintiff alleges that defendants violated his First Amendment right to
the free exercise of his religion by denying him a kosher diet, as required by his Jewish faith.  In its
entirety, the amended complaint alleges:

1)      Plaintiff is a Jewish prisoner who's [sic] religious beliefs require him to eat
        only kosher foods.

2)      On December 6, 2006 Plaintiff sent a request to prison chaplain Archer at
        Macomb Correctional Facility, requesting approval for kosher meals.

3)      On December 12, 2006 Plaintiff answered a questionnaire administered by
        Chaplain Archer, the questionnaire asked for brief answers, and that is what
        plaintiff attempted to provide.  (questionnaire attached)

4)      On December 12, 2006 Chaplain Archer sent a memo to Dave Burnett, CFA
        Special Activities Director, recommending approval of plaintiff's request for
        kosher diet. (memo attached)

5)      On January 29, 2007 Plaintiff submitted [a] grievance when he did not
        receive kosher meals within a reasonable time.

6)      In response to plaintiff's grievance Joe Scott, Assistant Deputy Warden,
        informed plaintiff that his request was denied because plaintiff's responses
        to questionnaire questions were too general, and cited PD 05.03.150
        "Religious Beliefs and Practices of Prisoners" at paragraph TT, as authority.

7)      [Plaintiff] is still without a kosher diet, and has been forced to limit his diet
        to an occasional piece of fruit, or vegetable, and whatever supplements are
        available in the prison store when he can afford them.

8)      [Plaintiff's] diet has been grossly inadequate, and has caused petitioner to
        seek health care assistance on several occasions for diet related problems.

9)      Per PD 05.03.150 "Religious Beliefs and Practices of Prisoners," [plaintiff]
        is unable to again request a kosher diet for a period of one year following this
        denial.

10)     Prior to being discharged on a prior sentence in 2001 [plaintiff] was on a
        kosher diet with the Department of Corrections, and his adherence to the
        Jewish faith is well documented.

11)     [Plaintiff] contends that Michigan Department of Corrections gives Dave

2

Burnett the authority as CFA Special Activities Director, to regulate who receives religious diets.

12)    [Plaintiff] contends that Defendant Burkett [sic] abused this authority, and violated this [Plaintiff's] constitutional right to practice his designated religion when he refused to provide petitioner with a kosher diet, and instructed Defendant Scott to deny [plaintiff's] request.

13)    Defendant Burkett's [sic] reasoning for the denial of [plaintiff's] religious diet was that the [plaintiff's] responses to the questionnaire were too general, although the questionnaire asked for brief responses.

14)    PD 05.03.150 "Religious Beliefs and Practices of Prisoners" at paragraph SS states that approval for religious diets shall only be granted if it is necessary to practice the prisoner's designated religion, i.e., a religious diet should have been provided for this [plaintiff], as a kosher diet is necessary for the practice of [Plaintiff's] religion.

15)    Consideration of abstract criteria i.e., whether [Plaintiff's] answers to the questionnaire were general in nature is not dispositive of whether a kosher diet is necessary to the practice of [Plaintiff's] religion.

16)    As [a] matter [of] exculpatory evidence, the [Plaintiff] was already approved, and was receiving Kosher meal[s] on his first prison term. The [Plaintiff] was approved to eat Kosher, by Lansing decision and order.

17)    Since there has been no change in the [Plaintiff's] religious life, the burden of proof is on Lansing. Lansing needs to justify their now contradictory denial of kosher [diet].

18)    As a result of the unjustifiable contradictory kosher denial, on the [Plaintiff's] second prison term, the [Prisoner's] health has been failing due to his inadequate nutrition.

19)    It is up to Lansing to explain their discriminatory, and life threatening, unjustified change, for denial [of] kosher meals to [Plaintiff].

Amended Compl., ¶¶ 1-19. Plaintiff seeks injunctive relief and $1,000,000 in punitive damages.

Currently before the Court is defendants' motion for summary judgment, filed on March 7, 2008. Defendants argue that they are entitled to summary judgment on plaintiff's First Amendment claim because they determined that plaintiff's religious beliefs were not sincerely held pursuant to

MDOC Operating Procedure 05.03.150, and because this operating procedure is a valid means for determining whether a prisoner's religious beliefs are sincerely held. Further, defendants argue that they are entitled to qualified immunity. Finally, defendants contend that they are entitled to summary judgment to the extent that plaintiff's complaint can also be read as asserting a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff filed a response on May 1, 2008. Plaintiff argues that he has always been Jewish since birth, that his responses to the questionnaire were not sufficient to deny him a kosher diet because he was asked to give brief responses, and that the unconstitutionality of the defendants' action is shown by the fact that he was placed on a kosher diet when he was previously incarcerated. Plaintiff filed amended responses on June 24 and September 12, 2008, and defendants filed a reply on October 3, 2008.

B.      *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

4

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.    *Analysis*

1.    *First Amendment*

The First Amendment to the Constitution provides, in relevant part: "Congress shall make

5

no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"  U.S.

CONST. amend. I.  This clause is applicable to the states via the Due Process Clause of the

Fourteenth Amendment.  *Cruz v. Beto*, 405 U.S. 319 (1972); *Murdock v. Pennsylvania*, 319 U.S.

105 (1943).  The Supreme Court has set forth the test for analyzing free exercise claims brought

by prisoners:

> Several general principles guide our consideration of the issues presented
> here.  First, convicted prisoners do not forfeit all constitutional protections by
> reason of their conviction and confinement in prison.  Inmates clearly retain
> protections afforded by the First Amendment, including its directive that no law
> shall prohibit the free exercise of religion.  Second, lawful incarceration brings
> about the necessary withdrawal or limitation of many privileges and rights, a
> retraction justified by the considerations underlying our penal system.  The
> limitations on the exercise of constitutional rights arise both from the fact of
> incarceration and from valid penological objectives--including deterrence of crime,
> rehabilitation of prisoners, and institutional security.
>
> In considering the appropriate balance of these factors, we have often said
> that evaluation of penological objectives is committed to the considered judgment
> of prison administrators, who are actually charged with and trained in the running
> of the particular institution under examination.  To ensure that courts afford
> appropriate deference to prison officials, we have determined that prison
> regulations alleged to infringe constitutional rights are judged under a
> "reasonableness" test less restrictive than that ordinarily applied to alleged
> infringements of fundamental constitutional rights. We recently restated the proper
> standard:  When a prison regulation impinges on inmates' constitutional rights, the
> regulation is valid if it is reasonably related to legitimate penological interests.
> This approach ensures the ability of corrections officials to anticipate security
> problems and to adopt innovative solutions to the intractable problems of prison
> administration, and avoids unnecessary intrusion of the judiciary into problems
> particularly ill suited to resolution by decree.

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987) (internal citations, quotations, and

alterations omitted) (footnote omitted) (applying the general reasonable relationship test of *Turner*

*v. Safley*, 482 U.S. 78 (1987) to free exercise claims).  Under the *Turner/O'Lone* analysis, the

Court must consider four factors: (1) whether there is a valid, rational connection between the

challenged regulation or action and legitimate penological objectives; (2) whether alternative

means for exercising the right remain open; (3) whether accommodation of the asserted right will have undue impact on the guards, other prisoners, and prison resources generally; and (4) whether an alternative to accommodation exists which fully accommodates the prisoner's rights at *de minimis* costs to valid penological interests. *See Turner*, 482 U.S. at 90; *Whitney v. Brown*, 882 F.2d 1068, 1072 (6th Cir. 1989); *Pollack v. Marshall*, 845 F.2d 656, 658 (6th Cir. 1988).

Before the *Turner/O'Lone* analysis comes into play, however, plaintiff must make a threshold showing that the practice he is being denied is motivated by his religious beliefs, and that those beliefs are sincerely held. *See DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc). "Without doubt, prison officials are entitled to assure themselves of a prisoner's sincerity of religious belief as a prerequisite to their considering a request for accommodation." *Ketzer v. Williams*, No. 4:06-CV-73, 2008 WL 4534020, at *21 n.11 (W.D. Mich. Sept. 30, 2008) (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1030 (3d Cir. 1981)); *see also*, *McManus v. Bass*, No. 2:05CV117, 2006 WL 753017, at *6 (E.D. Va. Mar. 22, 2006) ("In the context of religious dietary requests, prison officials must regularly assess the sincerity of an inmate's religious beliefs to prevent prisoners from bringing false claims under the guise of religion."). The Establishment Clause of the First Amendment prohibits inquiry into the truth or validity of a religious belief; thus, while "the 'truth' of a belief is not open to question," a court may ask whether the professed belief "is 'truly held.'" *United States v. Seeger*, 380 U.S. 163, 185 (1965).

At the outset, it should be noted that several things are not at issue for purposes of this motion. First, defendants do not move for summary judgment on the basis that a kosher diet is not a religious requirement of Judaism, or any basis other than plaintiff's alleged lack of sincerity. Thus, defendants' motion provides no occasion to consider the sufficiency of any aspect of

7

plaintiff's claim other than the extent to which his religious belief is sincerely held.  Second, contrary to the argument presented in the bulk of defendants' brief, the issue here is not whether Operating Procedure 05.03.150 "is a constitutionally legitimate means of determining whether a prisoner holds a sincere belief that his religion requires that he maintain a kosher diet." Def.s' Br., at 6, 9.  Under *Turner*, a prison may legitimately provide a system for determining the sincerity of a prisoner's professed religious belief, and Operating Procedure 05.03.150 undoubtedly provides a constitutional means for making this determination.  *See McQuitter v. Burnett*, No. 2:07-cv-100, 2008 WL 45341110, at *10 (W.D. Mich. July 30, 2008); *Adams v. Burnett*, No. 2:06-cv-72, 2007 WL 329992, at *5 (W.D. Mich. Jan. 1, 2007).  However, plaintiff does not challenge the constitutionality of the procedure on its face.  Rather, he challenges the decision made by the defendants pursuant to the procedure–that is, the application of the procedure.  As the Sixth Circuit observed in a case involving the procedure at issue here, "[t]he fact that the procedure may pass constitutional muster, however, does not mean that every decision reached in accordance with the procedure will necessarily pass constitutional muster."  *Ben-Yahudah v. Bolden*, No. 94-2438, 1996 WL 571145, at *4 (6th Cir. Oct. 3, 1996).

Thus, the only questions for the Court in considering defendants' motion for summary judgment are whether, as a matter of law based on the evidence submitted, plaintiff's religious beliefs are sincerely held and, if so, defendants' denial of a kosher meal was nonetheless reasonable.  On these questions, the Court should conclude that genuine issues of material fact remain and that defendants are therefore not entitled to summary judgment.

Importantly, in considering these questions it must be kept in mind that the sincerity of a person's religious belief is a question of fact.  *See Seeger*, 380 U.S. at 185.  Further, the question

8

of the sincerity of plaintiff's belief is a question which goes to plaintiff's state of mind.  Although "[c]ases involving state of mind issues are not necessarily inappropriate for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1988) (footnote omitted), as a general matter summary judgment will rarely be appropriate on state of mind issues.  *See Helwig v. Pennington*, 30 Fed. Appx. 516, 518-19 (6th Cir. 2002); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993).

In his affidavit, defendant Burnett avers that two principal facts led to his decision that plaintiff was not being sincere in professing a religious need for a kosher diet.  First, he avers that plaintiff was twice before placed on a kosher diet and voluntarily went off the menu after a short time.  *See* Def.s' Br., Ex. 1, Aff. of Dave J. Burnett, ¶ 8.  He also avers that plaintiff repeatedly changed his religious preference.  *See id.*; Def.s' Reply, Ex. A.  Second, defendant Burnett avers that when plaintiff was interviewed "by Chaplain Archer, he seemed to provide only limited and general information about his faith, and its dietary practices."  Def.s' Br., Ex. 1, ¶ 9.  These averments, however, are insufficient to establish defendant's entitlement to judgment as a matter of law.

With respect to plaintiff's prior lapses while on a kosher diet, defendant Burnett's affidavit is of limited utility.  Plaintiff denies having voluntarily removed himself from a kosher diet.  While it is true that "[w]hen opposing parties tell two different stories, one of which is so blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), plaintiff's assertion is not "blatantly contradicted by the record." Defendants have presented no documentation supporting Burnett's averment, and the averment

9

itself is not made definitively, being only based on "the best of [his] recollection." Def.s' Br., Ex. 1, ¶ 9. Further, even if true, plaintiff's alleged back-sliding on a Kosher diet several years before the events giving rise to this suit would not entitle defendants to summary judgment. While "[e]vidence of nonobservance is relevant on the question of sincerity," it is not conclusive. *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988).

Nor does the record necessarily support the conclusion that plaintiff repeatedly changed his religious preference. Defendants have submitted a computer "screen shot" of the "Religion Code Change History" for plaintiff. *See* Def.s' Reply, Ex. A. Defendants have not submitted an affidavit from a knowledgeable person attesting to the authenticity and accuracy of the document, and thus the admissibility of the document is questionable.[1] More importantly, it is not clear that the affidavit supports the notion that plaintiff has repeatedly changed his religious affiliation. A March 5, 2000, entry lists his religious affiliation as "J," presumably meaning Jewish. It was changed on September 20, 2000, to "Q," and then on September 5, 2001, to "C," presumably meaning Catholic. These changes, however, long predate the events at issue here. Once plaintiff was reincarcerated in 2006, the documents reflects that plaintiff changed his religious affiliation from "C" (Catholic) to "O," presumably meaning "other," on September 1, 2006, and then from "O" to "J" on October 19, 2006. However, the column of the document labeled "Correction?" contains a "Y," presumably meaning "yes," for each of these changes. Without an affidavit

---

[1]Importantly, "[h]earsay evidence may not be considered on summary judgment." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). The document submitted by defendants is hearsay because it is offered "to prove the truth of the matter asserted," FED. R. EVID. 801(c)–that is, to prove that plaintiff indeed changed his religious preference as reflected in the document. The document may ultimately be admissible under the business records exception, *see* FED. R. EVID. 803(6), but defendants have not submitted an affidavit from a custodian or other knowledgeable official establishing the foundational requirements for admission of the document as a business record. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000).

explaining what this column means, it is reasonable to infer that it reflects that the 2006 changes were not actual changes in plaintiff's religious affiliation, but corrections to the record of what was always his preferred religious affiliation, consistent with plaintiff's allegation that since his reincarceration he had not been anything other than Jewish, and that the computer incorrectly designated his religious affiliation. Under this reading of the religion change history document, which is the only reasonable reading of the document as the record now stands, the document establishes that plaintiff has for the most part identified himself as Jewish, and has done so consistently since his reincarceration. Only for about one year during his prior imprisonment did plaintiff identify himself as following some religion other than Judaism. While these changes may provide some evidence that plaintiff was not sincere in his professed religious beliefs, they are not alone or in conjunction with the evidence of his prior experience on a kosher diet sufficient to establish as a matter of law either that plaintiff was not sincere in his religious beliefs or that defendants were reasonable in concluding that he was not sincere.

Defendant Burnett's second avowed reason for denying a kosher meal–the generality of plaintiff's responses–is likewise insufficient to entitle defendants to summary judgment. Contrary to the conclusion reached by defendant Burnett, it appears that plaintiff's responses to the questions asked of him provided a fair amount of information regarding the major teachings of Judaism, why a kosher diet is required including the biblical source of this injunction, and a basic description of what a kosher diet is and what foods it allows. *See* Amended Compl., Ex. 1. Plaintiff's responses were sufficient for Chaplain Archer to conclude that plaintiff was "extremely knowledgable [sic] in reference to the requirements of his religion practices [sic] and the tenants [sic] of his faith on a daily basis," and to recommend that plaintiff be allowed a kosher diet. *Id*.

11

While a prisoner's knowledge is relevant, and "a lack of basic knowledge of why food must be Kosher and what foods are Kosher is a strong indication of a lack of sincerity," *Adams*, 2007 WL 329992, at *5, plaintiff's responses provide evidence of at least a basic knowledge of Judaism and the rules regarding a kosher diet.

In a number of cases, courts have found summary judgment inappropriate on similar facts. Particularly persuasive is the decision in *Horacek v. Burnett*, No. 07-11885, 2008 WL 4427825 (E.D. Mich. Aug. 19, 2008) (report of Whalen, M.J.), *adopted by* 2008 WL 4427792 (E.D. Mich. Sept. 30, 2008) (Tarnow, J.), a case involving facts strikingly similar to those present here.  In *Horacek*, the plaintiff had previously been granted a kosher diet, and upon his reincarceration for a parole violation and placement at the Macomb Correctional Facility again requested a kosher meal.   The plaintiff was interviewed by Chaplain Archer, who determined that he was knowledgeable regarding the tenets of his faith and recommended a kosher diet.  The plaintiff's request was ultimately denied by defendant Burnett.  *See id*. at *1-*2.  In connection with his motion for summary judgment, Burnett filed an affidavit averring that he had denied the request because the plaintiff's reoffending while on parole reflected a lack of sincerity about practicing Judaism, as did his removal from a kosher diet several years earlier for violating the program's requirements.  *See id*. at *2.  The court denied the defendant's motion for summary judgment, noting that the question of the sincerity of a prisoner's religious belief is one of fact, and that the plaintiff's prior placement on a kosher diet coupled with the chaplain's conclusion that the plaintiff had adequately explained the tenets of his faith and a kosher diet created a genuine issue of material fact.  *See id*. at *7.  The Court explained that "[a]t a minimum, the undisputed fact that the Plaintiff passed the very eligibility test prescribed by the MDOC Operating procedure creates

12

a question of disputed fact as to his sincerity that is sufficient to defeat a motion for summary judgment." *Id.* The Court concluded that "[i]n combination, the chaplain's recommendation, the Plaintiff's demonstrated knowledge of the Jewish religion, his prior approval for the Kosher Meal Program and the affidavits from other inmates, juxtaposed against the Defendant's questionable reasons for denying the request for kosher meals, create a significant issue of material fact as to the Plaintiff's sincerity." *Id.* Other courts have reached the same result on similar facts. *See Jackson v. Mann*, 196 F.3d 316, 320-21 (2d Cir. 1999); *Mosier v. Maynard*, 937 F.2d 1521, 1526-27 (10th Cir. 1991); *Patrick v. LeFevre*, 745 F.2d 153, 159-60 (2d Cir. 1984).

For these reasons, the Court should conclude that genuine issues of material fact remain with respect to whether plaintiff's professed religious beliefs are sincerely held and the reasonableness of defendants' conclusion that they were not sincerely held. Because this is the only aspect of plaintiff's free exercise claim upon which defendants move for summary judgment, the Court should deny defendant's motion.

2.     *RLUIPA*

Defendants also contend that they are entitled to summary judgment to the extent that plaintiff is attempting to raise a statutory claim under the the Religious Land Use and Institutionalized Persons Act (RLUIPA), which in relevant part provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The RLUIPA provides for a civil case of action for any violation of the

act.  *See id*. § 2000cc-2(a).  "Government," as used in the act, includes any "person acting under color of state law."  *Id*. § 2000cc-5(4)(A)(iii).  The RLUIPA does not define "substantial burden," but the courts that have considered the Act have defined the term by reference to the Supreme Court's First Amendment case law.  Under the RLUIPA, a substantial burden must be more than an inconvenience on religious exercise.  Rather, the challenged government conduct "must impose a significantly great restriction or onus upon such exercise."  *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation omitted).  In other words, "a 'substantial burden is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."  *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).

As with plaintiff's First Amendment claim, the bulk of defendants' argument with respect to the RLUIPA focuses on the validity of its policy limiting a kosher diet to those holding a sincerely held belief in Judaism.  Again, however, the question is not whether the regulation itself furthers a compelling governmental interest, but rather the lawfulness of the policy's application in plaintiff's case.  While the state may have a compelling state interest in restricting a kosher diet to those sincerely holding a belief in the Jewish faith and in providing a procedure for making this determination, there is no compelling state in interest in denying a kosher meal to a prisoner who, in fact, has a sincerely held religious belief requiring such a diet.  "The point is this: under either a *Turner v. Safely* or RLUIPA analysis, the Defendant's argument for summary judgment stands or falls on the issue of the sincerity of the Plaintiff's religious beliefs.  As discussed above, Plaintiff has affirmatively shown a genuine question of material fact on that issue, such that a jury could reasonably find in his favor.  Summary judgment is therefore inappropriate."  *Horacek*, 2008 WL

14

4427825, at *8.

3.     *Qualified Immunity*

Defendants also argue that they are entitled to summary judgment on the basis of qualified immunity.  As a general matter, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The purpose behind qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id*. at 806.  In determining whether an official is entitled to qualified immunity, a court asks "whether the violation involved a clearly established rights of which a reasonable official would have known" such that the official's conduct "was objectively unreasonable in light of the clearly established constitutional right." *Feathers v. Ahey*, 319 F.3d 843, 848 (6th Cir. 2003); *see also*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).  In determining whether a right is clearly established, a court looks first to the decisions of the Supreme Court, then to those of the Sixth Circuit, and finally to decisions of other courts. *See Dickerson*, 101 F.3d at 1157.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.  It is not enough for a general right–such as the right to adequate medical care–be established; the right must be established "in a more particularized . . . sense" relevant to the defendant's acts or omissions. *Id*.  At the same time, the precise conduct at issue need not previously have been held unlawful, and conduct can violate clearly established law "even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  "[I]n an

15

obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).  Under *Brosseau*, as the Sixth Circuit has recently explained, a plaintiff may show that a defendant violated clearly established law by showing either that: (1) the violation was obvious under the general constitutional standards governing the asserted right; or (2) the defendant's conduct failed to adhere to a particularized body of precedent that governs the case.  *See Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (discussing *Brosseau*, 543 U.S. at 199-200).

Defendants argument that they are entitled to qualified immunity is without merit.  It was clear at the time of the conduct involved in this case that both the First Amendment and the RLUIPA prohibit prison officials from denying a kosher diet to a prisoner who has a sincerely held religious belief requiring such a diet.  While defendants dispute whether plaintiff's belief is sincerely held, as noted above that issue presents a question of fact.  Thus, if plaintiff is able to prove the allegations of his complaint, he will have established that defendants violated his clearly established rights under the First Amendment and the RLUIPA.  *See Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir. 2006); *Horacek*, 2008 WL 4427825, at *10.  Accordingly, the Court should conclude that defendants are not entitled to summary judgment.

D.    *Conclusion*

In view of the foregoing, the Court should deny defendants' motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/10/09

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on February 10, 2009.

s/Eddrey Butts
Case Manager

---

17