UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY BONNELL (#236381),

       Plaintiff,

                              CASE NO. 2:07-CV-15444
                              JUDGE DENISE PAGE HOOD
                              MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

DAVE BURNETT and
MICHAEL MARTIN,

       Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S OCTOBER 30, 2010
MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY
(Doc. Ent. 49) and PLAINTIFF'S FEBRUARY 14, 2011 RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY AS TO
DEFENDANTS MARTIN AND BURNETT (Doc. Ent. 63)**

*Table of Contents*

I.      RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **REPORT:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     **A.**    **Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     **B.**    **Pending Dispositive Motions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     **C.**    **Summary Judgment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     **D.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
         1.    MDOC PD 05.03.150 & MDOC OP 05.03.150A . . . . . . . . . . . . . . . . . . . . . . . . 8
         2.    Plaintiff's Kosher Diet Requests began upon his 2006 incarceration . . . . . . . . . . . . 10
         **3.**    **The Court should deny as moot plaintiff's October 30, 2010 dispositive motion.** . 15
         **4.**    **The Court should deny plaintiff's February 14, 2011 dispositive motion.** . . . . . . . 16
              a.    Plaintiff requests a finding that Burnett and Martin are liable for violating
                     plaintiff's First Amendment, RLUIPA and due process rights. . . . . . . . . . . . 16
              b.    Burnett and Martin were acting under color of state law. . . . . . . . . . . . . . . . 18
              c.    Plaintiff is not entitled to summary judgment on his First Amendment free
                     exercise claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                  19
              d.    Plaintiff is not entitled to summary judgment on his RLUIPA claims. . . . . . . 39
              e.    Plaintiff is not entitled to summary judgment on his procedural due process
                     claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

III.   NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

I.      **RECOMMENDATION:** The Court should deem moot plaintiff's October 30, 2010

motion for partial summary judgment on the issue of liability (Doc. Ent. 49) and should deny

plaintiff's February 14, 2011 renewed motion for partial summary judgment on the issue of

liability as to defendants Martin and Burnett (Doc. Ent. 63).

II.     **REPORT:**

A.      **Background**

1.      **Plaintiff Filed This Case Pro Se in 2007.**

Plaintiff Jeremy Bonnell is currently incarcerated at the Michigan Department of

Corrections (MDOC) Chippewa Correctional Facility (URF) in Kincheloe, Michigan.[1]  On

December 21, 2007, while incarcerated at the St. Louis Correctional Facility (SLF) in St. Louis,

Michigan, Bonnell filed this case pro se against Dave Burnett, MDOC Special Activities

Coordinator (SAC) Correctional Facilities Administration (CFA), and Joe Scott, Macomb

Correctional Facility (MRF) Assistant Deputy Warden (ADW) for Custody.  Doc. Ent. 1; *see*

*also* Doc. Ent. 11-2, Doc. Ent. 13.[2]

On March 6, 2008, plaintiff filed an amended prisoner civil rights complaint against the

same two defendants.  Doc. Ent. 10.  The following day, March 7, 2008, defendants Burnett and

Scott filed a motion for summary judgment.  Doc. Ent. 11.

In my February 10, 2009 report and recommendation on defendants' motion for summary

judgment, I addressed the First Amendment and RLUIPA claims, as well as the defense of

---

[1]*See* www.michigan.gov/corrections, "Offender Search."  On August 30, 2006, plaintiff was
sentenced to 10-20 years for a September 14, 2004 offense of armed robbery in violation of Mich.
Comp. Laws § 750.529.  *Id.* (Case No. 0605232-FC (Kent County)).  It appears he has been
incarcerated at URF since March 2010.  Doc. Ent. 44.

[2]Judge Hood has referred this case to me to conduct pretrial matters.  Doc. Entries 6 and 26.

2

qualified immunity.  Doc. Ent. 21 at 5-16.  Within my discussion of the First Amendment, Doc.

Ent. 21 at 5-13, I explained that plaintiff "challenges the decision made by the defendants

pursuant to the procedure–that is, the application of the procedure."  Also, I noted: "[t]he fact

that the procedure may pass constitutional muster, however, does not mean that every decision

reached in accordance with the procedure will necessarily pass constitutional muster too."

*Ben-Yahudah v. Bolden*, No. 94-2438, 1996 WL 571145, at *4 (6th Cir. Oct. 3, 1996)).

Furthermore, I stated, "the only questions for the Court in considering defendants' motion for

summary judgment are whether, as a matter of law based on the evidence submitted, plaintiff's

religious beliefs are sincerely held and, if so, defendants' denial of a kosher meal was

nonetheless reasonable."  Then, I advised, "[o]n these questions, the Court should conclude that

genuine issues of material fact remain and that defendants are therefore not entitled to summary

judgment."  Doc. Ent. 21 at 8.

After concluding that genuine issues of material fact remained regarding whether

plaintiff's professed religious beliefs were sincerely held and the reasonableness of defendants'

conclusion that they were not sincerely held, I recommended that the Court deny defendant's

motion as to plaintiff's First Amendment free exercise claim.  Doc. Ent. 21 at 13.  When

addressing plaintiff's RLUIPA claim, I explained that the issue was the lawfulness of the

policy's application in plaintiff's case.  Doc. Ent. 21 at 13-15.  Finally, I stated that defendants'

qualified immunity argument was without merit.  Doc. Ent. 21 at 15-16.  Ultimately, I concluded

that the Court should deny defendants' motion for summary judgment.  Doc. Ent. 21 at 16.

On March 31, 2009, Judge Hood entered an order granting and denying in part

defendants' March 7, 2008 motion for summary judgment and accepting and rejecting in part my

report and recommendation.  Doc. Ent. 25.  In so doing, Judge Hood found that "a material question of fact exists as to whether Plaintiff's beliefs are truly held."  Doc. Ent. 25 at 6. However, she dismissed the claims against Scott.  Doc. Ent. 25 at 9.[3]

**2.      In February 2010, Counsel was Assigned to Represent Plaintiff.**

On July 28, 2009, plaintiff filed a motion for the appointment of counsel.  Doc. Ent. 33. On September 14, 2009, I entered an order conditionally granting plaintiff's motion for the appointment of counsel.  Doc. Ent. 38.

Several months later, on February 1, 2010, I entered an order of assignment of counsel. Doc. Ent. 40.  On February 14, 2010, attorney Patricia L. Selby filed a notice of appearance on plaintiff's behalf.  Doc. Ent. 41.[4]

**3.      In December 2010, Through Counsel, Plaintiff Filed a Second Amended Complaint.**

On December 2, 2010, I filed a stipulated order withdrawing plaintiff's motion (Doc. Ent. 48) to amend his Complaint; docketing Plaintiff's proposed amended complaint (Doc. Ent. 48-1) as Plaintiff's Second Amended Complaint; and cancelling the motion hearing noticed for November 23, 2010 (Docket Entry 50).  Doc. Ent. 53.

On December 11, 2010, plaintiff filed a second amended complaint in which he named Dave Burnett and Michael Martin as defendants.  The causes of action include:

---

[3]Burnett filed an answer on April 13, 2009.  Doc. Ent. 28.  Plaintiff filed a response to the answer on April 28, 2009.  Doc. Ent. 29.  On August 11, 2009, I entered an order granting nunc pro tunc plaintiff's motion to amend/supplement the petition (Doc. Ent. 19).  Doc. Ent. 36.

[4]On April 12, 2010, I conducted a scheduling conference.  The following day, I entered a scheduling order.  Doc. Ent. 46.  However, on July 6, 2010, I entered a stipulated order for extension of time.  Doc. Ent. 47.

(I)     "VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS, ENFORCEABLE THROUGH 42 U.S.C. § 1983, BY DEFENDANT DAVE BURNETT[;]"

(II)    "VIOLATION OF PLAINTIFF'S RIGHTS UNDER RLUIPA, 42 U.S.C. §§ 2000cc, et seq., BY DEFENDANT DAVE BURNETT[;]"

(III)   "VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS, ENFORCEABLE THROUGH 42 U.S.C. § 1983, BY DEFENDANT MICHAEL MARTIN[;]"

(IV)    "VIOLATION OF PLAINTIFF'S RIGHTS UNDER RLUIPA, 42 U.S.C. §§ 2000cc, et seq., BY DEFENDANT MICHAEL MARTIN[;]" and

(V)     "VIOLATION OF PLAINTIFF'S RIGHTS TO PROCEDURAL DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION, ENFORCEABLE THROUGH 42 U.S.C. § 1983, BY DEFENDANTS[.]"

Doc. Ent. 56.[5]

**B.     Pending Dispositive Motions**

1.     On October 30, 2010, plaintiff filed a motion for partial summary judgment on the issue

of liability.  Doc. Ent. 49.  Therein, plaintiff argues:

[1]     The elements of section 1983 claim are met.

[2]     Participation in a prison kosher meal program may be subject to testing, under *O'Lone* and *Turner*.

[3]     The procedure as applied by Defendants was constitutionally unsound, as it provided Plaintiff with no opportunity to demonstrate his sincerity and qualification for a kosher diet.

[4]     RLUIPA is also violated under these facts[.]

Doc. Ent. 49 at 11-24.[6]

---

[5]Martin filed an answer on January 14, 2011 (Doc. Ent. 59) and an amended answer on January 18, 2011 (Doc. Ent. 61).

[6]Attached to this motion are fifteen (15) exhibits.

On November 22, 2010, Burnett filed a response, arguing that plaintiff's motion for partial summary judgment was premature and an issue of fact remained as to plaintiff's sincerity. Doc. Ent. 52.  In reply, plaintiff argued that the motion was not premature as to Burnett and the record established that plaintiff was sincere in his beliefs.  Doc. Ent. 54.

2.      On February 14, 2011, plaintiff filed a renewed motion for partial summary judgment on the issue of liability as to defendants Martin and Burnett.  Doc. Ent. 63.  Therein, plaintiff makes the same arguments as those which appear in his October 30, 2010 dispositive motion.  Doc. Ent. 63 at 13-27.[7]

On March 7, 2011, defendants filed a response, in which they claim that "[t]here is always going to be a question of fact that exists when attempting to determine whether or not an individual is sincere in his or her beliefs."  Doc. Ent. 65 at 3.

On March 17, 2011, plaintiff filed a reply.  Doc. Ent. 67.

## C.    Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) ("Motion for Summary Judgment or Partial Summary Judgment.").  As the Sixth Circuit has noted:

> A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

---

[7]Attached to this motion are sixteen (16) exhibits.

6

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867, 872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)).  "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial."  *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).  The moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue.  *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, [quoting former Fed. R. Civ. P. 56(e)], a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[8]  "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  *See also*

---

[8]Plaintiff's original complaint was signed under penalty of perjury.  Doc. Ent. 1 at 5.

*Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (personal

knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997)

(conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v.*

*United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*,

412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient."

*Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). As the

United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986),

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for

a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Id.* at 246-250 (citations

omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-587 (1986). The standard for summary judgment mirrors the

standard for a directed verdict under Fed. R. Civ. P. 50(a). *Anderson*, 477 U.S. at 250.

Consequently, a non-movant must produce evidence that would be sufficient to require

submission to the jury of the dispute over the fact.

**D.      Analysis**

**1.      MDOC PD 05.03.150 & MDOC OP 05.03.150A**

The MDOC has a policy directive which governs prisoners' religious beliefs and

practices. *See* MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners "). In part,

this policy provides:

8

> The CFA [Correctional Facilities Administration] or FOA [Field Operations
> Administration] Deputy Director or designee may authorize the development of a
> separate menu to meet the necessary religious dietary restrictions of a prisoner.
> Such menus shall meet the minimum nutritional standards set forth in PD
> 04.07.100 "Offender Meals". The appropriate Deputy Director or designee shall
> have final approval of such menus and shall determine at which facilities the
> meals will be offered. Kosher meals shall be provided in CFA institutions as set
> forth in OP 05.03.150-A "Kosher Meal Program".

MDOC PD 05.03.150, effective 09/20/07, ¶ QQ; *see also* MDOC PD 05.03.150, effective

05/24/04, ¶ RR, Doc. Ent. 63-5 [Exhibit 5].  The policy further provides:

> A prisoner may eat from a religious menu only with approval of the CFA Special
> Activities Coordinator.  Approval shall be granted only if it is necessary to the
> practice of the prisoner's designated religion.  To request approval, the prisoner
> must submit a written request to the Warden, TRV [Technical Rule Violation
> Center] Manager, or designee, as appropriate, who shall obtain information
> regarding the prisoner's request and religious beliefs prior to referring the request
> to the CFA Special Activities Coordinator. The CFA Special Activities
> Coordinator shall notify the Warden, TRV Manager, or designee, as appropriate,
> of the decision; the Warden or TRV Manager shall ensure that the prisoner is
> notified. A prisoner whose request is denied shall not be allowed to submit
> another request to eat from that religious menu for at least one year.

MDOC PD 05.03.150, effective 09/20/07, ¶ SS; *see also* MDOC PD 05.03.130, effective

05/24/04, ¶ TT, Doc. Ent. 63-5 [Exhibit 5].

    MDOC Operating Procedure 05.03.150A governs the "Kosher Meal Program."  Doc.

Ent. 63-12 [Exhibit 12].  Upon receipt of a prisoner's written request for participation in the

Kosher Meal Program, "the Warden shall verify that the prisoner is eligible to participate in the

Kosher Meal Program based on the prisoner's designated religion by requiring the [ADW] for

Programs or the chaplain to interview the prisoner and obtain a response to the following

questions:

    1.    Briefly explain the major teachings of your designated religion.

2.      Why is a kosher diet required by this religion?

3.      What is a kosher diet?  In other words, how does it differ from food otherwise provided by the institution?  What types of food are not allowed?

MDOC OP 05.03.150A, effective 01/12/98, ¶ L.  "A written report of the responses to the questions, along with the prisoner's request, shall be referred to the Special Activities Coordinator in the Office of Program Services, Administration and Programs, with a recommendation as to whether a Kosher diet should be approved.  The Special Activities Coordinator shall review the documentation and advise the warden whether the request is approved.  The warden shall ensure that the prisoner is advised if the request is not approved."  MDOC OP 05.03.150A, effective 01/12/98 ¶ M.[9]

## 2.    Plaintiff's Kosher Diet Requests began upon his 2006 incarceration.[10]

**a.     2006:**  On September 13, 2006, plaintiff completed a Step I grievance form in which he mentioned the confiscation of his Torah and prayer shawl upon his arrival at Charles Egeler Reception & Guidance Center (RGC) and his lack of religious (Jewish) materials.  The grievance was received at Step I on September 15, 2006 and was assigned Grievance Identifier SMN

---

[9]As I indicted in my previous report, under *Turner*, a prison may legitimately provide a system for determining the sincerity of a prisoner's professed religious belief, and Operating Procedure 05.03.150 undoubtedly provides a constitutional means for making this determination. *See McQuitter v. Burnett*, No. 2:07-cv-100, 2008 WL 45341110, at *10 (W.D. Mich. July 30, 2008); *Adams v. Burnett*, No. 2:06- cv-72, 2007 WL 329992, at *5 (W.D. Mich. Jan. 1, 2007).  *See* Doc. Ent. 21 at 8.

[10]In his amended complaint, plaintiff explains that "[p]rior to being discharged on a prior sentence in 2001, Plaintiff was previously approved for a kosher diet within the Department of Corrections, and his adherence to the Jewish faith is well documented."  Doc. Ent. 56 ¶ 18.  In the instant motion, plaintiff claims was placed on a kosher diet "when previously incarcerated with the MDOC."  Doc. Ent. 63 at 8.  The MDOC's website lists several inactive sentences for Jeremy Bonnell (#236381).  *See* www.michigan.gov/corrections, "Offender Search."

[Charles Egeler Correctional Facility]-06-09-01396-20c.  The following day, Chaplain Basir

responded, "Prisoner Bonnell has been given the Jewish literature that this office has available.  I

will request that [he] be transferred to a facility that has a kosher diet line, since his religious

preference is Judaism."  Doc. Ent. 63-9 at 1.

On November 6, 2006, plaintiff wrote to Chaplain Archer.  Doc. Ent. 19 at 43.  On

November 16, 2006, plaintiff completed a Step I grievance form regarding his efforts to get a

Kosher diet.  It was received at Step I on November 20, 2006 and assigned Grievance Identifier

MRF-06-11-01444-02-0e.  Doc. Ent. 19 at 21.  In the meantime, on November 30, 2006, plaintiff

wrote to Chaplain Archer regarding his request for a Kosher diet, mental strain and a First

Amendment violation.  Doc. Ent. 63-9 at 2.  He wrote a similar letter on December 4, 2006 to

Assistant Deputy Warden (ADW) Joe Scott.  Doc. Ent. 63-9 at 3.

On December 12, 2006, ADW Joe Scott responded to plaintiff's grievance (MRF-01444).

Doc. Ent. 19 at 21.  That same day, Chaplain Archer recommended to Burnett that plaintiff's

Kosher diet request be approved.  Doc. Ent. 63-1 [Exhibit 1].  However, on December 16, 2006,

CFA SAC Burnett informed Macomb Correctional Facility (MRF) Warden Wolfenbarger that

plaintiff's Kosher menu request was denied, noting in part that plaintiff had twice gone off the

Kosher menu and that "during the interview, [plaintiff's] responses were much more limited and

much more general."  Doc. Ent. 63-2 [Exhibit 2].

**b.     2007:** On January 29, 2007, plaintiff wrote to MRF ADW Joe Scott regarding Scott's

response to plaintiff's Kosher diet request.  Doc. Ent. 63-9 at 10.  Plaintiff also completed

Grievance Identifier MRF-07-02-00124.  ADW Scott's February 9, 2007 response cited PD

11

05.03.150 ¶ TT and noted that plaintiff's request for a Kosher diet was not approved, because "his answers to the Kosher diet Questionnaire were to[o] general in nature[.]" Doc. Ent. 19 at 22.

On February 21, 2007, while incarcerated at MRF, plaintiff completed a health care request for mental health regarding a kosher diet and religious services.  In part, the response indicated that plaintiff's "diet [and] religious beliefs are not a mental health issue or a cause for mental health treatment."  Doc. Ent. 63-9 at 4.  On MDOC Prisoner Stationary dated February 23, 2007, plaintiff stated he was "[e]ating like a bird."  Doc. Ent. 19 at 38-39.

By an MDOC Memorandum dated March 30, 2007, ADW Washington set forth a religious schedule for St. Louis Correctional Facility (SLF) Prisoners and Staff.  Although Jewish services were to be held on Saturdays, the memorandum noted that the Jewish services were "not currently meeting[.]"  Doc. Ent. 63-9 at 8.

On October 21, 2007, Bonnell wrote to Rec. Dir. Smith regarding a Kosher diet, Jewish service call out and religious material, and Smith responded.  Doc. Ent. 63-9 at 6; Doc. Ent. 63 at 10.  On October 22, 2007, plaintiff wrote to Smith.  Doc. Ent. 19 at 48.

On October 24, 2007, plaintiff completed a Step I grievance form.  It was received at Step I on October 29, 2007 and was assigned grievance identifier SLF-07-10-3110-20a.  Doc. Ent. 63-9 at 5.  Julius Mayfield responded on October 30, 2007, and ADW Washington reviewed the response on November 1, 2007.  Doc. Ent. 63-9 at 5, 7.

On October 31, 2007, while incarcerated at SLF, plaintiff wrote to ADW Washington. Someone responded in writing, "[a]ccording to CFA[,] you were not approved.  They have no record of it.  You are on callout for Monday[,] [November 5, 2007][.]" Doc. Ent. 19 at 49.

12

On November 6, 2007, Chaplain Thompson recommended to Burnett that plaintiff's Kosher diet request be approved.  Doc. Ent. 63-3 [Exhibit 3].  However, on November 9, 2007, Burnett informed Mid-Michigan Correctional Facility (STF)[11] Warden Lafler that he would not consider plaintiff's Kosher menu application until December 16, 2007 - one year from the previous denial.  Doc. Ent. 63-4 [Exhibit 4].

On November 16, 2007, plaintiff wrote to ADW Washington, in part regarding a Kosher diet and Jewish services.  Doc. Ent. 63-9 at 9.  That same day, Warden Lafler wrote to plaintiff, noting that his request was denied "based on the fact that [plaintiff was] last denied on [December 16, 2006]."  Doc. Ent. 19 at 26.

On or about December 5, 2007, plaintiff wrote to Burnett.  Doc. Ent. 19 at 17-18.  On December 10, 2007, plaintiff wrote to Chaplain Thompson.  Doc. Ent. 63-9 at 11.  On December 16, 2007, plaintiff wrote to the Resident Unit Manager (RUM).  Doc. Ent. 63-9 at 12-13.

On December 17, 2007, Burnett informed STF Warden Lafler that plaintiff's request for Kosher accommodation was denied at that time, stating in part that plaintiff "changes his faith of preference after his short experiences on the Kosher menu[,]" and referring to "several incorrect bits of information."  Doc. Ent. 63-7 [Exhibit 7].  On December 19, 2007, Chaplain Thompson recommended to Burnett that plaintiff's Kosher diet request be approved.  Doc. Ent. 63-6 [Exhibit 6].[12]

---

[11]As of October 17, 2010, the Mid-Michigan (STF) and Pine River (SPR) Correctional Facilities were consolidated.  They are now known as the Central Michigan Correctional Facility (STF).  *See* www.michigan.gov/corrections.

[12]As noted above, plaintiff filed the instant case on December 21, 2007.

On December 26, 2007, plaintiff wrote to ADW Washington regarding the status of his request to be placed on a Kosher diet.  Doc. Ent. 19-2 at 4.

**c.      2008:** On January 8, 2008, while incarcerated at SLF, plaintiff wrote to SLF Warden Ludwick.  Doc. Ent. 19 at 31.  On January 11, 2008, plaintiff wrote to Chaplain Thompson, wrote to SLF Warden Nick Ludwick, and completed a Health Care Request for Mental Health. Doc. Ent. 63-9 at 14-16; Doc. Ent. 19 at 40-41.  At the same time, plaintiff wrote to Burnett. Doc. Ent. 19 at 19.  On January 19, 2008, and January 29, 2008, plaintiff wrote to Chaplain Thompson.  Doc. Ent. 19 at 33-34.

On February 6, 2008, plaintiff wrote to Carson City Correctional Facility (DRF) Chaplain Adamson regarding a response to his December 19, 2007 interview.  Doc. Ent. 63-9 at 17.

On February 25, 2008, while incarcerated at DRF, plaintiff completed a Step I grievance form regarding his February 21, 2008 conversation with Chaplain Adamson regarding plaintiff's Kosher questionnaire dated December 19, 2007 with Chaplain Thompson at SLF.  Doc. Ent. 63-10 [Exhibit 10].  According to plaintiff, it was by the response to this grievance that he learned of Burnett's December 17, 2007 denial.  Doc. Ent. 63 at 9.

On February 28, 2008, Billy Thompson forwarded Bonnell's Kosher diet request.  DRF Chaplain Steve Adamson asked Chaplain Michael Martin about Bonnell's request.  Chaplain Martin responded.  Ultimately, Chaplain Adamson informed Chaplain Martin that when plaintiff arrived at DRF, "[h]is actions seem[ed] to indicate a level of sincerity."  Doc. Ent. 63-16 [Exhibit 16].[13]

---

[13]According to plaintiff, defense counsel sent Exhibit 16 (Doc. Ent. 63-16) to plaintiff's counsel on January 18, 2011.  Doc. Ent. 63 at 21 n.2.

On February 28, 2008, by way of a MDOC Memorandum from CFA Chaplain Michael Martin to DRF Warden Blain Lafler, plaintiff's Kosher Menu Request was denied. Doc. Ent. 63-8 [Exhibit 8]; Doc. Ent. 65-1. Among other things, Martin referred to Bonnell twice removing himself voluntarily from the Kosher menu, Bonnell's use of "readily available data[,]" and Bonnell's "apparent inability to explain these beliefs, to explain how they influence or guide his life, etc.[.]" Doc. Ent. 63-8.

On March 1, 2008, plaintiff completed a Step I grievance. It was received on March 4, 2008 and assigned Grievance Identifier DRF-08-03-00254-20e. Doc. Ent. 19 at 27-29; see also Doc. Ent. 19-2 at 11-12.[14]

### 3. The Court should deny as moot plaintiff's October 30, 2010 dispositive motion.

On October 30, 2010, plaintiff filed both a motion for leave to amend his complaint (Doc. Ent. 48) and a motion for partial summary judgment as to liability (Doc. Ent. 49). The motion to amend sought, among other things, to add Martin as a defendant (Doc. Ent. 48 ¶ 10), and attached to the motion for leave to amend was plaintiff's proposed second amended complaint (Doc. Ent. 48-1).

Plaintiff's October 30, 2010 motion for partial summary judgment as to liability acknowledges that "Mr. Martin is not yet a defendant in this action." However, plaintiff noted that "[f]or the purposes of judicial efficiency, if the amendment is granted, and to meet the deadline for dispositive motions, Plaintiff addresses his claims against Mr. Martin as though leave has been granted and the second amended Complaint entered into the record." Doc. Ent. 49 at 1 n.1. Therefore, it is clear that plaintiff's October 30, 2010 motion for partial summary

---

[14]Thereafter, and as noted above, plaintiff filed an amended complaint on March 6, 2008 (Doc. Ent. 10) and another amended complaint on December 11, 2010 (Doc. Ent. 56).

judgment related to the eventually filed December 11, 2010 second amended complaint against defendants Burnett and Martin.  Doc. Ent. 56.

Even so, plaintiff's later filed renewed motion for partial summary judgment on the issue of liability as to Martin and Burnett (Doc. Ent. 63) "reinstates all previous arguments in support of finding liability against both Defendants."  Doc. Ent. 63 at 1-2.  According to plaintiff, his October 30, 2010 (Doc. Ent. 49) and his February 14, 2011 (Doc. Ent. 63) motions are essentially identical, except: (1) "[t]he factual statements below laying out recent procedural history [Doc. Ent. 63 at 2-3 ¶¶ 1-5]," (2) "[t]he factual statement below [Doc. Ent. 63 at 5 ¶ 23] and recital of facts in the brief [Doc. Ent. 63 at 12] addressing a new exhibit provided by Defendant Martin as updated discovery on January 18, 2011 [Doc. Ent. 63-16]," and (3) "[t]he application and discussion of that additional exhibit[] [Doc. Ent. 63 at 14, 21-22, 24-25][.]"  Doc. Ent. 63 at 2.  Furthermore, plaintiff states he is resubmitting his motion and brief, "with the additional exhibit 16, and these additional paragraphs 1 through 5 and 23."  Doc. Ent. 63 at 3 ¶ 5.

Therefore, this report and recommendation analyzes only the renewed motion for partial summary judgment (Doc. Ent. 63) and its related papers.

**4.    The Court should deny plaintiff's February 14, 2011 dispositive motion.**

**a.    Plaintiff requests a finding that Burnett and Martin are liable for violating plaintiff's First Amendment, RLUIPA and due process rights.**

Plaintiff claims that Burnett and Martin "rely improperly on knowledge of faith practices as a requirement to demonstrate sincerity[,]" "cite information from several years prior for the purposes of denying Plaintiff's sincerity of belief at the time of his requests for kosher diet[,]" and "cite a number of factors, not identified in the MDOC procedure, as pertinent to an inquiry

into sincerity, including attempts to study the faith, participate in services, and pursue and obtain religious materials."  Doc. Ent. 63 at 4 ¶¶ 18-20.

Plaintiff argues that neither Burnett nor Martin "instructed the chaplains interviewing Plaintiff, nor the Plaintiff himself, that such information should be part of Plaintiff's answers." Doc. Ent. 63 at 4 ¶ 21.  Furthermore, plaintiff claims that, with the exception of Martin's February 28, 2008 electronic mail (Doc. Ent. 63-16), neither Burnett nor Martin "made any inquiry as to the above factors for the purposes of reviewing Plaintiff's request."  Doc. Ent. 63 at 4 ¶ 22.

Attached to plaintiff's motion are correspondence and grievances by plaintiff "seeking religious services and materials[.]"  Doc. Ent. 63 at 28; Doc. Ent. 63-9 (17 pages).  Plaintiff claims that if defendants had inquired into certain factors, "they would have found in the relevant time periods well over a dozen examples of Plaintiff's correspondence with chaplains and other administrative officials requesting religious services, religious materials, and access to a rabbi; and grievances over the lack thereof."  Doc. Ent. 63 at 4 ¶ 22.  As for Martin's February 28, 2008 request to Adamson, plaintiff notes Adamson's response that plaintiff's actions "seem[ed] to indicate a level of sincerity[,]" Doc. Ent. 63-16, and notes Martin's February 28, 2008 denial (Doc. Ent. 63-8 / Doc. Ent. 65-1).  Doc. Ent. 63 at 5 ¶ 23.

In sum, plaintiff argues that "[d]efendants' denials of [his] requests for a kosher diet, and their process of reviewing only that information that supports denial of an applicant's request for placement on a kosher diet does not comport with Due Process, and is a violation of Plaintiff's rights under the First Amendment and RLUIPA."  Therefore, plaintiff requests entry of partial summary judgment against Burnett and Martin and a finding that they are "liable for violations

17

of Plaintiff's rights pursuant to the First Amendment and RLUIPA, as well as the Fifth and

Fourteenth Amendments."  Doc. Ent. 63 at 5.

**b.**   **Burnett and Martin were acting under color of state law.**

Plaintiff brings his First Amendment and procedural due process claims by way of 42

U.S.C. § 1983.  Doc. Ent. 56 at 5, 8 and 10.  This statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  "A plaintiff may establish a claim under 42 U.S.C. § 1983 by showing that

(1) a person acting under color of state law (2) deprived the plaintiff of rights secured by the

United States Constitution or laws of the United States."  *Everson v. Board of Educ. of School*

*Dist. of the City of Highland Park*, 123 Fed.Appx. 221, 228 (6th Cir. 2005) (citing *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 150 (1970)).

The Court should agree with plaintiff that Burnett and Martin were acting under color of

state law at the time of the incidents in question.  *See* Doc. Ent. 63 at 14-15.  In his August 31,

2010 responses to plaintiff's first request for admissions, Burnett admitted that he "was a person

acting under color of state law when he denied Plaintiff's request for placement on a kosher

diet."  Doc. Ent. 63-11 [Exhibit 11].  And, at his September 24, 2010 deposition, Martin stated

that, during 2008 he became the SAC.  Doc. Ent. 63-14 [Exhibit 14 pp. 18-19].

**c.**   **Plaintiff is not entitled to summary judgment on his First Amendment free exercise**
        **claim.**

18

**I.**      As amended on December 11, 2010, plaintiff's First Amendment claim against

Burnett (¶¶ 31-44) and his First Amendment claim against Martin (¶¶ 57-75) allege that

"Plaintiff was given no opportunity to provide additional information on issues [defendants]

considered evidence of sincerity of belief, such as attendance at religious services; seeking

religious instruction and materials; and reading such materials."  Doc. Ent. 56 ¶¶ 37, 68.  Also,

plaintiff alleges that defendants "relied on information that was several years old, which had no

relevance to Plaintiff's current sincere belief."  Doc. Ent. 56 ¶¶ 42, 73.  And, these claims

discuss MDOC PD 05.03.150 ¶ SS and how a kosher diet is necessary for the practice Judaism.

Doc. Ent. 56 ¶¶ 43, 74.

Thus, plaintiff's First Amendment claims are based on the free exercise clause.  Under

the *Turner*/*O'Lone* analysis, the Court must consider four factors: (1) whether there is a valid,

rational connection between the challenged regulation or action and legitimate penological

objectives; (2) whether alternative means for exercising the right remain open; (3) whether

accommodation of the asserted right will have undue impact on the guards, other prisoners, and

prison resources generally; and (4) whether an alternative to accommodation exists which fully

accommodates the prisoner's rights at de minimis costs to valid penological interests. *See Turner*

*v. Safley*, 482 U.S. 78, 90 (1987); *Whitney v. Brown*, 882 F.2d 1068, 1072 (6th Cir. 1989);

*Pollack v. Marshall*, 845 F.2d 656, 658 (6th Cir. 1988).

However, before the *Turner/O'Lone* analysis comes into play, plaintiff must make a

threshold showing that the practice he is being denied is motivated by his religious beliefs, and

that those beliefs are sincerely held. *See DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en

banc).  As plaintiff acknowledges, Doc. Ent. 63 at 16, "the touchstone for determining whether a

19

religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed ... are sincerely held,' not whether 'the belief is accurate or logical.'" *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (quoting *Jackson v. Mann*, 196 F.3d 316, 320(2dCir.1999)); *see also Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, 21 n.11 (W.D. Mich. Sept. 30, 2008) ("Without doubt, prison officials are entitled to assure themselves of a prisoner's sincerity of religious belief as a prerequisite to their considering a request for an accommodation.").

  **ii.**  In my February 10, 2009 report and recommendation (Doc. Ent. 21) on defendants' motion for summary judgment (Doc. Ent. 11), I stated with respect to the First Amendment claim:

> . . . the sincerity of a person's religious belief is a question of fact. *See Seeger*, 380 U.S. at 185. Further, the question of the sincerity of plaintiff's belief is a question which goes to plaintiff's state of mind. Although "[c]ases involving state of mind issues are not necessarily inappropriate for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 198[9]) (footnote omitted), as a general matter summary judgment will rarely be appropriate on state of mind issues. *See Helwig v. Pennington*, 30 Fed. Appx. 516, 518-19 (6th Cir. 2002); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993).

Doc. Ent. 21 at 8-9. With respect to plaintiff's prior lapses while on a kosher diet, I concluded that Burnett's March 11, 2008 affidavit (Doc Ent. 13) was of limited utility. Doc. Ent. 21 at 9-10. Also, I noted that the record did not necessarily support the conclusion that plaintiff repeatedly changed his religious preference." Doc. Ent. 21 at 10-11. Finally, I noted that Burnett's other reason for denying a kosher meal - "the generality of plaintiff's responses" - was likewise insufficient to entitle defendants to summary judgment." Doc. Ent. 21 at 11-12.

Specifically, I stated, "the Court should conclude that genuine issues of material fact remain with respect to whether plaintiff's professed religious beliefs are sincerely held and the reasonableness of defendants' conclusion that they were not sincerely held." Doc. Ent. 21 at 13.

**iii.     Plaintiff argues that Burnett and Martin's application of the operating procedure to Plaintiff's requests resulted in arbitrary and capricious denials.** *See* **Doc. Ent. 63 at 19-22.** By way of background, plaintiff claims that MDOC OP 05.03.150A "does not specify what 'documentation' is to be reviewed for the SAC's decision[,]" but ¶ M "itself calls out only the written responses to the questions and the prisoner's request." Doc. Ent. 63 at 17. Plaintiff also discusses how the Sixth Circuit's decision in *Colvin* was critical of the MDOC procedure's emphasis on "objective knowledge." Doc. Ent. 63 at 18-19 (citing *Colvin*, 605 F.3d at 298).

In support of plaintiff's argument that Burnett and Martin's application of the operating procedure to plaintiff's requests resulted in arbitrary and capricious denials, plaintiff contends that "Burnett and Martin both state that their inquiry into sincerity is not limited to the answers to the three questions laid out in" MDOC OP 05.03.150A ¶ L. Doc. Ent. 63 at 19. Here, plaintiff refers to Burnett's August 31, 2010 responses to plaintiff's first interrogatory request, wherein Burnett mentioned factors used to indicate sincerity beyond those listed in MDOC OP 05.03.150A and stated, "[g]enerally[,] decisions are made based on a combination of factors, rather than on a single factor." Doc. Ent. 63-15 [Exhibit 15]; Doc. Ent. 63 at 19-20.

Then, plaintiff refers to the September 24, 2010 depositions of Burnett (Doc. Ent. 63-13 at 42 [Exhibit 13]) and Martin (Doc. Ent. 63-14 at 25 [Exhibit 14]), for the idea that defendants "both state that the SAC may use 'whatever information is available to him.'" As to Burnett,

21

plaintiff refers to Burnett's testimony that he gets certain information "by way of the interview process by the chaplain, the prisoner's responses to standard questions in the interview process[,]" and "[a] chaplain when they write up that report to make that recommendation to me typically will indicate their interaction with the prisoner.  Has the prisoner requested literature?  Has the prisoner requested to see a rabbi?  Has the prisoner been in communication with one of the Jewish advocacy groups?" Doc. Ent. 63-13 at 38; Doc. Ent. 63 at 20.

Yet, plaintiff claims, MDOC OP 05.03.150A "gives no direction to chaplains to expand their report and recommendation beyond the answers to the three questions."  Citing Chaplain Archer's December 12, 2006 recommendation of approval (Doc. Ent. 63-1), Chaplain Thompson's November 6, 2007 recommendation of approval (Doc. Ent. 63-3) and Chaplain Thompson's December 19, 2007 recommendation of approval (Doc. Ent. 63-6), plaintiff states, "[i]t appears clear that the two chaplains who recommended Plaintiff for approval (Archer and Thompson) were not aware of their ability to elaborate on their report, as both simply reported Plaintiff's answers and their recommendations."  Doc. Ent. 63 at 20.

Also, plaintiff points out that, during Burnett's deposition, he was asked about a grievance - presumably SLF-07-10-3110-20a, wherein plaintiff mentions the lack of Jewish services, Jewish materials and a Rabbi at SLF, as well as his denial of access to the Kosher line (Doc. Ent. 63-9 at 5, 7) - Burnett testified that "[p]ursuing religious materials would be an indication that he sincerely wanted materials and wanted to learn."  Doc. Ent. 63-13 at 51.  Furthermore, Burnett testified that, if he'd had the grievance available, he "then would have had to have followed up with this sheet to find out if there was a basis for the grievance, if the

22

grievance had merit." Doc. Ent. 63-13 at 52. Yet, plaintiff contends, "Burnett gives no indication that such information is part of the evaluation process." Doc. Ent. 63 at 20.

As to Martin, plaintiff contends that Martin "cited a broader list of factors than just the three questions in the Operating Procedure[.]" Doc. Ent. 63 at 20. Here, plaintiff points to Martin's testimony that, when evaluating whether an individual has a sincere belief, he would consider, in part, the individual's motivation "to begin to conform their behavior to the teachings of that religion[,]" such as whether the prisoner has "begun to attend the services of that religion if they're available at the facility[,]" or whether the prisoner has "checked out books regarding their religion if they're available from the chaplain's library[.]" Doc. Ent. 63-14 at 11-12; Doc Ent. 63 at 20-21. Martin also testified that he is not always aware of such actions by a prisoner; he further testified that if a chaplain does not make such observations in his/her report, Martin looks at the prisoners' responses to the three questions. Doc. Ent. 63-14 at 12. When asked how he would expect a prisoner to expand upon a "general" response to the first question - "[b]riefly explain the major teachings of your designated religion[,]" Martin explained:

> . . . if a Jewish applicant said that . . . we believe in the Torah, and if he explained what the Torah is, a list of the books of the Torah, explain the significance of the Torah in the life of a Jewish person and perhaps gave some examples of how one of the commands given by God had – has modified his behavior or his way of thinking, or if they mentioned Passover. If they said Passover is one of the major Holy Days of Judaism, if they could explain . . . what Passover is, what is its significance, what does it – what it means to them in their life as a Jew.

Doc. Ent. 63-14 at 14; Doc. Ent. 63 at 21.

Then, plaintiff cites Martin's February 28, 2008 denial, particularly Martin's comments that plaintiff had provided "little explanation" and "only basic information," Doc. Ent. 63-8. Plaintiff also notes Martin's September 24, 2010 deposition testimony regarding what he expects

23

in an answer to the question "[b]riefly explain the major teachings of your designated religion[,]" MDOC OP 05.03.150A ¶ L, such as "what is unique about the one God whom Judaism serves? You know, who is God?  What is God like?  What is the relationship that God created with Judaism?"  Doc. Ent. 63-14 at 20.

Then, with respect to Martin's February 28, 2008 denial (Doc. Ent. 63-8) and Chaplain Thompson's December 19, 2007 report to Burnett- specifically Thompson's notation of plaintiff's response that "[t]he Jewish faith isn't a religion but a way of life[,]" (Doc. Ent. 63-6), Martin agreed that he did not ask, "how is it a way of life?"  Nor did Thompson ask for an expansion on that question.  Therefore, Martin agreed that "there wasn't an opportunity to address where [Martin] thought the voids were because "once a year when they complete this, they have to get it right or they're denied kosher again for a year."  Doc. Ent. 63-14 at 22-23. Furthermore, Martin agreed that it may be an indication of sincerity if a prisoner filed a grievance asking for religious services or stating that he couldn't get the religious materials he needed, but Martin would not necessarily be aware of such a grievance; he explained that "[t]he only instance where [he] would be made aware of it would be if it went to a step three grievance level and [Martin] was contacted by one of the staff in litigation."  Doc. Ent. 63-14 at 25-27. Martin also agreed that he would not have a way of knowing whether a prisoner had written to a religious ministry for information.  Doc. Ent. 63-14 at 27-28.

In illustration of the information Martin had available to him at the time of his February 28, 2008 denial of plaintiff's Kosher diet request (Doc. Ent. 63-8), plaintiff points to Adamson's February 28, 2008 response to Martin that when plaintiff arrived at DRF, plaintiff "requested to be placed on Jewish services[,]" plaintiff had also "inquired about religious literature" and had

24

"availed himself of the Chaplain's Library[,]" and plaintiff's actions "seem[ed] to indicate a level of sincerity[,]" Doc. Ent. 63-16.  Doc. Ent. 63 at 21.

Then, plaintiff contends that "Martin was very sure that the Operating Procedure provides a basis for him to apply any information in an inmate's file to the decision to grant or deny a kosher diet."  Doc. Ent. 63 at 22.  Here, plaintiff points to his counsel's examination of Martin at his deposition with respect to MDOC OP 05.03.150A ¶ M - specifically, the part stating that the SAC shall review the "documentation[.]"  Martin understood this "to be referring to the responses of the applicant and any comments that the interviewer, most often the chaplain, adds in his cover memo or report."  When asked whether he felt that "an inmate's entire file is fair game to be considered for part of that decision[,]" Martin explained that he has access to a prisoner's "past history with religious meals."  Doc. Ent. 63-14 at 25.  In support of plaintiff's statement that "the most dispositive information appears to be inmate history, regardless of its age[,]" Doc. Ent. 63 at 22, plaintiff points to Martin's statement that, sometimes, he "will look to see if . . . the prisoner changed his religious preference[.]"  However, "beyond that and any prior history the prisoner has had with the religious meal program . . . that's virtually all that [he] look[s] at."  While Martin agreed that ¶ M does not say that the SAC "shall review the documentation and any other information he feels pertains to the decision[,]" Martin believed that it "reflects [his] practice and that of Mr. Burnett's."  Doc. Ent. 63-14 at 25.

According to plaintiff, defendant Martin's February 28, 2008 "rejection of the recent and pertinent information regarding Plaintiff's interest in Jewish services and literature, in favor of data that was several years old, demonstrates the arbitrariness and capriciousness of the decision as applied to Plaintiff."  Plaintiff further contends that defendant Burnett "was similarly arbitrary

in his failure to make any inquiry into the factors he stated were pertinent to demonstrate sincerity, and in his reliance on several years' old data and criticisms of Plaintiff's questionnaire responses." Doc. Ent. 63 at 22.

In sum, it is plaintiff's position that there is "no genuine issue that Defendants' decisions as applied to Plaintiff were unconstitutional, in that they were arbitrary and capricious." In support of this statement, plaintiff contends that defendants "neither sought out the very evidence they cite as relevant to a determination of sincerity, nor did they apply evidence they had in support of that determination." Instead, plaintiff claims, "[d]efendants relied . . . on out of date information and tests of objective knowledge of religious principles that the Sixth Circuit considers constitutionally unsound." Doc. Ent. 63 at 8. Plaintiff also states that defendants' decision making process "was dedicated to finding any possible reason to find" that plaintiff was not entitled to placement on a kosher diet. Doc. Ent. 63 at 27.

**iv.      Plaintiff also argues that the procedure as applied by Defendants was constitutionally unsound, as it provided Plaintiff with no opportunity to demonstrate his sincerity and qualification for a kosher diet. *See* Doc. Ent. 63 at 22-25.** According to plaintiff, Burnett and Martin's denials of plaintiff's kosher diet requests and their applications of MDOC PD 05.03.150A are a case where "[t]he fact that the procedure may pass constitutional muster, however, does not mean that every decision reached in accordance with the procedure will necessarily pass constitutional muster too." *Ben-Yahudah v. Bolden*, No. 94-2438, 1996 WL 571145, at *4 (6th Cir. Oct. 3, 1996)). Doc. Ent. 63 at 22. For purposes of an "as applied challenge," Plaintiff states, "[t]he context here is a comparison of the information used by Defendants to determine whether Plaintiff held a sincere belief in Judaism, and to find him

26

insincere, with the information Defendants say demonstrates sincere belief." Doc. Ent. 63 at 22-23.

According to plaintiff, Burnett and Martin, as SACs, "applied the decision-making procedure in an unconstitutional manner. That is, their inquiry into Plaintiff's sincerity was not genuine, and their denials [were] arbitrary and capricious." It is plaintiff's position that:

> Defendants sought out information that provided reasons to reject Plaintiff's requests for the kosher diet, and failed to seek or permit the introduction of any information that would support his requests, even as to the factors Defendants themselves identify as pertinent. Mr. Bonnell's sincerity at the time of his 2006 and 2007 requests for placement on a kosher menu was found lacking, based primarily on seven to nine year old data - whether he had voluntarily removed himself from the kosher diet those years before. As this assertion is repeated in all three responses by Defendants Burnett and Martin [Doc. Entries 63-2 [December 16, 2006], 63-7 [December 17, 2007], 63-8 [February 28, 2008]], it is clear that this data was dispositive.

Doc. Ent. 63 at 23.

As for defendants' criticisms that "Plaintiff's answers to the three questions failed adequately to demonstrate his sincere belief[,]" plaintiff claims these criticisms violate the holding in *Colvin* that "tests of objective knowledge are an unconstitutional test for sincerity." Doc. Ent. 63 at 23.

In *Colvin*, the Sixth Circuit, in part, addressed a motion to amend the complaint. *Colvin*, 605 F.3d at 294-299. Therein, the Court addressed Colvin's claims that he "(1) was wrongly removed from the kosher-meal program, and (2) was wrongly denied reinstatement by Burnett, Chaplain Riley, and other prison officials[,]" and considered these claims as being brought pursuant to RLUIPA and 42 U.S.C. § 1983. *Colvin*, 605 F.3d at 295. As to Colvin's wrongful removal claim, the Court could not "definitively conclude that LMF's strict application of its

27

kosher-meal policies to Colvin was constitutional." *Colvin*, 605 F.3d at 297.  As to Colvin's

failure to reinstate claim, the Court stated:

> . . . the touchstone for determining whether a religious belief is entitled to
> free-exercise protection is an assessment of "whether the beliefs professed ... are
> *sincerely held*," not whether "the belief is accurate or logical." *Jackson v. Mann*,
> 196 F.3d 316, 320 (2d Cir.1999) (emphasis in original) (citations and internal
> quotation marks omitted). And, under RLUIPA, prison officials are to focus their
> inquiries on "the sincerity of a prisoner's professed religiosity." *See Cutter v.
> Wilkinson*, 544 U.S. 709, 725 n. 13[] (2005).

*Colvin*, 605 F.3d at 298.  Furthermore, the Court stated:  "Chaplain Riley and Burnett

emphasized Colvin's lack of objective knowledge of Judaism, and thus they appear to have failed

to make a proper inquiry into the sincerity of Colvin's beliefs.  And, to the extent that their

decision to deny Colvin's reinstatement request was based on his lack of objective knowledge, it

was unconstitutional."  *Id.*

Therefore, plaintiff claims, defendants are "left with groundless denials of Plaintiff's

requests for a kosher diet."  Doc. Ent. 63 at 23.  Additionally, plaintiff claims he "had a history

of self-identification as Jewish[,]" and "had previously been approved for the kosher diet."  In

addition to my February 10, 2009 report and recommendation (Doc. Ent. 21) on defendants'

motion for summary judgment (Doc. Ent. 11), wherein I observed that "plaintiff has for the most

part identified himself as Jewish, and has done so consistently since his reincarceration[,]" Doc.

Ent. 21 at 11, plaintiff points to his  September 13, 2006 Step I grievance form in which he

mentioned the confiscation of his Torah and prayer shawl upon his arrival at Charles Egeler

Reception & Guidance Center (RGC) (Doc. Ent. 63-9 at 1).  Doc. Ent. 63 at 23.

Also, plaintiff claims he "repeatedly sought opportunities to practice his faith during the

time period in question."  Doc. Ent. 63 at 24.  In support of this statement, plaintiff specifically

28

refers to his December 10, 2007 memo to Chaplain Thompson, wherein plaintiff sought Jewish

addresses and expressed dismay over the lack of religious services, a Rabbi and Jewish religious

material (Doc. Ent. 63-9 at 11).  Plaintiff also refers to his January 11, 2008 letter to SLF

Warden Ludwick, wherein plaintiff requested a transfer to a facility "that has religious services

[with a Rabbi] and religious material[,]" Doc. Ent. 63-9 at 16.

      Plaintiff claims he has demonstrated a record of sincerity through his requests seeking

instruction and guidance in, as well as opportunities to practice, Judaism.  Yet, plaintiff claims,

while Burnett and Martin "suggest that such information informs their inquiry," they both "admit

they made no effort to seek out such information[,]" and "provided no guidance to chaplains or

to Plaintiff that such information should be offered, or even would be considered if offered, let

alone that such information would be highly pertinent to their decision."  Doc. Ent. 63 at 24.

      Plaintiff also notes that, despite Martin's September 24, 2010 deposition testimony

regarding the questions in MDOC OP 05.03.150A ¶ L and his reliance on the related report, such

as Chaplain Thompson's December 19, 2007 memorandum (Doc. Ent. 63-14 at 23, Doc. Ent. 63-

6), Martin's February 28, 2008 e-mail requested Adamson's observations that might indicate a

sincerity of belief; and Adamson's response concluded that plaintiff's actions "seem[ed] to

indicate a level of sincerity[,]" Doc. Ent. 63-16.  Therefore, plaintiff notes, Martin issued his

February 28, 2008 denial (Doc. Ent. 63-8) even though Adamson described plaintiff as sincere.

Doc. Ent. 63 at 24.

      Presumably referring to Chaplain Archer's December 12, 2006 recommendation to

approve (Doc. Ent. 63-1), Chaplain Thompson's November 6, 2007 recommendation to approve

(Doc. Ent. 63-3) and Chaplain Adamson's February 28, 2008 statement that plaintiff's actions at

DRF seemed to indicate a level of sincerity (Doc. Ent. 63-16), plaintiff claims that, "[a]ll three chaplains involved in Plaintiff's requests either recommended approval for Plaintiff or noted his apparent sincerity.  There was no reason for Plaintiff to believe he needed to supplement the record further, and no opportunity to do so."  Doc. Ent. 63 at 24.

Finally, plaintiff claims that defendants Burnett and Martin "did not make a genuine inquiry into the sincerity of Plaintiff's beliefs for the purposes of evaluating his requests for a kosher diet."  Doc. Ent. 63 at 25.  Specifically, plaintiff takes issue with Burnett's reliance on old data and criticism of plaintiff's answers, arguing that Burnett's conduct "was unconstitutional as applied to this Plaintiff."  Doc. Ent. 63 at 24-25.  According to plaintiff, "[t]here is no genuine issue of material fact as to that failure to make a constitutionally adequate inquiry into Plaintiff's sincere beliefs."  Doc. Ent. 63 at 25.  Plaintiff considers Martin's inquiry "limited," noting that (1) plaintiff's grievances, letters, and kites that demonstrated plaintiff's repeated attempts to practice Judaism were available to Martin and (2) Martin's February 28, 2008 supplemental inquiry (Doc. Ent. 63-16) "provided additional confirmation of Plaintiff's sincerity."  Yet, "Martin completely disregarded that response, deciding instead that Plaintiff was insincere." Doc. Ent. 63 at 25.

As a result, plaintiff contends, "[t]heir denials of those requests were arbitrary and capricious, and a violation of his rights under the First Amendment."  Doc. Ent. 63 at 25.

**v.      In response, defendants contend that "an issue of fact remains regarding whether Plaintiff is sincere in his beliefs."  Doc. Ent. 65 at 3-4.**  To begin, defendants refer to plaintiff's statement that "[t]he kosher cases evaluated by this district and by the Sixth Circuit

also emphasi[ze] the central inquiry of whether the applicant's belief is sincerely held[,]" Doc.
Ent. 63 at 16.  Doc. Ent. 65 at 3.

Then, after referring to my February 10, 2009 report and recommendation (Doc. Ent. 21
at 8-9), defendants cite Burnett and Scott's March 7, 2008 motion for summary judgment (Doc.
Ent. 11) and defendant Burnett's November 22, 2010 response (Doc. Ent. 52) to plaintiff's
October 30, 2010 motion for partial summary judgment (Doc. Ent. 49) for their contention that
"both sides . . . have presented evidence to support their position that either Plaintiff was or was
not sincere in his beliefs."  Doc. Ent. 65 at 3-4.

In support of the position that "Burnett has presented evidence that he denied Plaintiff's
request for kosher meals in part, because of Plaintiff's history of voluntarily removing himself
from the kosher meal program[,]" defendants specifically point to the December 16, 2006
MDOC Memorandum from Burnett to MRF Warden Wolfenbarger (Doc. Ent. 52-2 / Doc. Ent.
63-2).  Therein, Burnett notes Bonnell's approval for the Kosher menu program in 1997 and
1999, but also notes that Bonnell went off of the menu after two months in 1997 and after less
than two weeks in 1999 (Doc. Ent. 63-2).  Doc. Ent. 65 at 4.

And, in support of their position that "Defendant Martin based his decision to deny
Plaintiff's request in part on his belief that Plaintiff did not sufficiently answer the three
questions contained in MDOC Operating Procedure[,]" defendants specifically point to the
February 28, 2008 MDOC Memorandum from CFA Chaplain Michael Martin to DRF Warden
Blain Lafler (Doc. Ent. 63-8, Doc. Ent. 65-1).  Doc. Ent. 65 at 4.  Therein, Martin noted, inter
alia:

> Bonnell's present ability to provide only basic information about the teachings of
> Judaism, his apparent inability to explain these beliefs, to explain how they

> influence or guide his life, etc., his changes of religious preference and past
> history of voluntarily removing himself from kosher and accepting a non-kosher
> life do not suggest sufficient sincerity for approval.

Doc. Ent. 65-1.  According to defendants, "Martin believes that Plaintiff's responses to those

questions did not comprise the depth of knowledge that would demonstrate to him that Plaintiff

held a sincere belief in his faith that would entitle[] him to receive the kosher diet."  Doc. Ent. 65

at 4.

**vi.     In reply, plaintiff argues that his motion should be granted as to Burnett and Martin, because (1) "Defendants' evidence is unsupported," (2) "Defendants' assessment of sincerity based on objective knowledge has been called unconstitutional by the Sixth Circuit," and (3) "Plaintiff's evidence demonstrates by Defendants' own criteria his sincerity."  Doc. Ent. 67 at 1-2.**

In support of these arguments, plaintiff points out that he and the chaplains who

interviewed him with regard to his kosher diet requests complied with MDOC PD 05.03.150A,

noting that Paragraph L(1) asks, "*[b]riefly* explain the major teachings of your designated

religion."  Doc. Ent. 67 ¶ 1 (emphasis added).  Plaintiff cites Chaplain Archer's December 12,

2006 recommendation to approve, describing Bonnell as "genuine," Doc. Ent. 63-1, Chaplain

Thompson's November 6, 2007 recommendation to approve (Doc. Ent. 63-3) and Chaplain

Adamson's February 28, 2008 statement that plaintiff's actions at DRF seemed to indicate a

level of sincerity (Doc. Ent. 63-16).  Doc. Ent. 67 ¶ 2.

Furthermore, plaintiff contends that when defendants adhered to MDOC OP 05.03.150,

they unconstitutionally rejected plaintiff's answers to the Paragraph L questions based upon

plaintiff's objective knowledge of Judaism.  Doc. Ent. 67 ¶ 3.  Plaintiff claims this

unconstitutional reliance on objective knowledge is evident in Burnett's December 17, 2007

denial, wherein Burnett stated that Chaplain Thompson's report (presumably Thompson's

November 6, 2007 report [Doc. Ent. 63-3]) "contained several incorrect bits of information."

Doc. Ent. 63-7.  Plaintiff also cites Martin's February 28, 2008 denial, wherein Martin noted

"Bonnell's present ability to provide only basic information about the teachings of Judaism," and

"his apparent inability to explain these beliefs," Doc. Ent. 63-8.  Furthermore, plaintiff notes

Burnett's September 24, 2010 testimony that "I'm not sure why I made that statement.  I'm not

seeing things that stick out to me now[,]" (Doc. Ent. 63-13 p. 50).  *See* Doc. Ent. 67 ¶ 4.

Then, plaintiff claims, when defendants went beyond MDOC OP 05.03.150A ¶ L's three

questions and the Chaplain's interview, "the additional evidence they relied upon to deny

Plaintiff's requests was unsupported by the record."  In other words, plaintiff claims,

"Defendants' basis for deciding against Plaintiff's sincerity has been characterized as

unsubstantiated evidence by this Court[.]"  Doc. Ent. 67 ¶ 5.  Here, plaintiff refers to my

February 10, 2009 report's treatment of Burnett's March 11, 2008 affidavit (Doc. Ent. 13)[15] and

---

[15]"Defendants have presented no documentation supporting Burnett's averment [regarding plaintiff's prior lapses while on a kosher diet], and the averment itself is not made definitively, being only based on 'the best of [his] recollection.'" Doc. Ent. 21 at 9-10 (citing Doc. Ent. 13 ¶ 8).

that same report's treatment of the Religion Code Change History (Doc. Ent. 20-3).[16]  Doc. Ent. 67 ¶ 5a, ¶ 5b.

Plaintiff then turns to defendants's deposition testimony that evidence of requests for religious literature and requests to see a rabbi would support sincerity of belief.  Doc. Ent. 67 ¶ 6 (citing Doc. Ent. 63-13 pp. 38, 51; Doc. Ent. 63-14 pp. 11-12, 26-27).  Plaintiff submits that the correspondence and grievances by plaintiff seeking religious services and materials (Doc. Ent. 63 at 28; Doc. Ent. 63-9) are "extensive evidence of repeated, consistent requests for religious services, religious literature, and access to a rabbi, in the time frame at issue for his kosher requests." Doc. Ent. 67 ¶ 7.  Also, citing Burnett's September 24, 2010 testimony (Doc. Ent. 63-13 at 52),[17] plaintiff claims that Burnett "expected applicants for kosher to volunteer the unasked-for information; he made no inquiry as to the additional factors for sincerity he cites." Doc. Ent. 67 ¶ 8.  Finally, plaintiff claims, Martin made such an inquiry by way of his February 28, 2008 electronic mail to DRF Chaplain Adamson (Doc. Ent. 63-16); however, plaintiff contends, "Martin disregarded this direct observation by the Chaplain at Plaintiff's own facility, and rejected Plaintiff's request, finding him insincere."  Doc. Ent. 67 ¶ 9 (citing Doc. Ent. 63-8).

_____

[16]With regard to plaintiff's changes in religious preference, I reviewed the Religion Code Change History (Doc. Ent. 20-3) and stated, "[w]ithout an affidavit explaining what this column means, it is reasonable to infer that it reflects that the 2006 changes were not actual changes in plaintiff's religious affiliation, but corrections to the record of what was always his preferred religious affiliation, consistent with plaintiff's allegation that since his reincarceration he had not been anything other than Jewish, and that the computer incorrectly designated his religious affiliation." Under such a reading, I noted that the document "establishes that plaintiff has for the most part identified himself as Jewish, and has done so consistently since his reincarceration." Doc. Ent. 21 at 10-11.

[17]Burnett testified that, if he'd had the grievance available, he "then would have had to have followed up with this sheet to find out if there was a basis for the grievance, if the grievance had merit." Doc. Ent. 63-13 at 52.

34

**vii.     Plaintiff's February 14, 2011 motion (Doc. Ent. 63) raises different issues than defendants' March 7, 2008 dispositive motion (Doc. Ent. 11).**  Defendants' March 7, 2008 dispositive motion argued that (I) "The MDOC's Operating Procedure 05.03.150 is a constitutionally legitimate means of determining whether a prisoner holds a sincere belief that his religion requires that he maintain a kosher diet[,]" Doc. Ent. 11 at 7-10, (II) "Limiting access to the Kosher Meal Program to prisoners who have sufficient knowledge of Judaism and its dietary requirements furthers compelling governmental interests[,]" Doc. Ent. 11 at 10-13, and (III) "Defendants Burnett and Scott are entitled to qualified immunity."  Doc. Ent. 11 at 13-16.

My February 10, 2009 report and recommendation observed as to the First Amendment claim that plaintiff was not challenging the constitutionality of the procedure on its face.  Rather, he was challenging the decision made by the defendants pursuant to the procedure–that is, the application of the procedure.  Doc. Ent. 21 at 8.  As to the RLUIPA claim, I observed that the question is not whether the regulation itself furthers a compelling governmental interest, but rather the lawfulness of the policy's application in plaintiff's case.  Doc. Ent. 21 at 14.

Plaintiff's February 24, 2011 motion makes it clear that plaintiff is bringing an as applied challenge - Burnett and Martin's decisions were arbitrary and capricious (Doc. Ent. 63 at 19-22) and plaintiff did not have an opportunity to demonstrate his sincerity and qualification for a kosher diet (Doc. Ent. 63 at 22-25).  *See also* Doc. Ent. 63 at 8.

**viii.     Still, the Court should not conclude that "[t]here is no genuine issue of material fact that Plaintiff had a sincere belief that his faith practices required a kosher diet[.]"  Doc. Ent. 63 at 8.**

35

In the instant motion, plaintiff admits that "[t]he question at issue is whether Plaintiff was sincere in his belief[,]" "[t]here is no genuine issue of material fact that Plaintiff was sincere in his beliefs as measured by the factors Defendants cite as relevant to the question[,]" and "[t]here is further no issue that Plaintiff was not permitted to demonstrate that sincerity, or that Defendants' evaluated Plaintiff's beliefs in a constitutionally sound manner." Doc Ent. 63 at 27. In his reply, plaintiff contends that there is no genuine issue of material fact that "he was sincere in his belief," and that "he is entitled to judgment as a matter of law that Defendants' denials of his requests for a kosher diet were unconstitutional." Doc. Ent. 67 ¶ 11.

However, as I stated in my February 10, 2009 report and recommendation, "the question of the sincerity of plaintiff's belief is a question which goes to plaintiff's state of mind." Doc. Ent. 21 at 8-9. Although the bases of defendants Burnett and Scott's March 7, 2008 motion for summary judgment (Doc. Ent. 11) differ from those of plaintiff's February 14, 2011 renewed motion for partial summary judgment on the issue of liability as to defendants Martin and Burnett (Doc. Ent. 63), my statements that "the sincerity of a person's religious belief is a question of fact[,]" and "whether plaintiff's belief is sincerely held [is an] issue [that] presents a question of fact[,]" remain unchanged. Doc. Ent. 21 at 8, 16.

In reaching this conclusion, I look to documents filed since the Court's order - namely the attachments to the instant motion. Doc. Ent. 63 at 28 (Index of Exhibits 1-16). Some of these were attached to defendants October 3, 2008 reply. *See* Doc. Ent. 20-4; Doc. Ent. 63-2 (December 16, 2006); Doc. Ent. 63-4 (November 9, 2007); Doc. Ent. 63-8 (February 28, 2008). Another is attached to plaintiff's original complaint, his March 6, 2008 amended complaint, and

36

his March 12, 2009 response to defendants' objection.  Doc. Ent. 1 at 6-7, Doc. Ent. 10 at 16-17, Doc. Ent. 23 at 15-16, Doc. Ent. 63-1 (December 12, 2006).

New to the instant motions are documents which pre-date the March 7, 2008 dispositive motion (Doc. Ent. 11), such as Chaplain Thompson's November 6, 2007 recommendation of approval (Doc. Ent. 63-3), Chaplain Thompson's December 19, 2007 recommendation of approval (Doc. Ent. 63-6), Burnett's December 17, 2007 denial (Doc. Ent. 63-7), correspondence and grievances by plaintiff seeking religious services and materials dated 2006, 2007 to February 2008 (Doc. Ent. 63-9), plaintiff's unnumbered February 25, 2008 Step I grievance form (Doc. Ent. 63-10) and the February 28, 2008 electronic mail exchange between Adamson and Martin (Doc. Ent. 63-16).

Also new to the instant motions are documents which post-date the Court's March 31, 2009 order (Doc. Ent. 25), such as Burnett's August 31, 2010 response to plaintiff's first request for admissions (Doc. Entries 63-11), Burnett's September 24, 2010 deposition testimony (Doc. Ent. 64-13), Martin's September 24, 2010 deposition testimony (Doc. Ent. 63-14) and Burnett's August 31, 2010 response to plaintiff's first interrogatory request (Doc. Ent. 63-15).

However, even if as plaintiff points out, evidence existed to demonstrate his sincere belief, Doc. Ent. 63 at 8, on a motion for summary judgment, "[t]he central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *International Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635 (6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

Plaintiff's reply summarized as follows:

. . . Defendants' decisions violated Sixth Circuit direction by testing Plaintiff for objective knowledge of his faith, and for finding insincerity in his alleged lack of that knowledge; for basing their denials on record evidence that has not been substantiated before this Court; and finally, as to Defendant Burnett, for never inquiring into the additional evidence that he said he utilized to evaluate sincerity; and as to Defendant Martin, for making that inquiry, but disregarding recent, current evidence of Plaintiff's sincere belief in favor of old, irrelevant, and unfounded statements about Plaintiff's faith practices.

Doc. Ent. 67 at 4-5 ¶ 10.

Plaintiff is correct that, to the extent that defendants' decision to deny Bonnell's request for placement on a Kosher diet "was based on his lack of objective knowledge, it was unconstitutional." *Colvin*, 605 F.3d at 298. However, the remaining arguments go to the weight of the evidence as to whether plaintiff was sincere[18] and whether defendants' determinations that he was not were reasonable.[19]

---

[18]In other words, as defendants conclude, "sincerity of belief is something that by nature involves a question of fact, and both sides in this matter have presented some evidence to support their respective positions[.]" Doc. Ent. 65 at 5.

[19]As I stated in my February 10, 2009 report and recommendation as to plaintiff's First Amendment claim: "the Court should conclude that genuine issues of material fact remain with respect to whether plaintiff's professed religious beliefs are sincerely held and the reasonableness of defendants' conclusion that they were not sincerely held." Doc. Ent. 21 at 13. *See Berryman v. Granholm*, 343 Fed.Appx. 1, 6 (6th Cir. 2009) (on appeal from the district court's grant of summary judgment where the complaint was based upon RLUIPA, the First Amendment free exercise clause and the Eighth Amendment's protection against cruel and unusual punishment, the Sixth Circuit concluded within its discussion of the constitutional claims, "Berryman's removal from the Kosher meal program passes muster under the deferential *Turner* standard. Berryman himself conceded that he had ordered and signed for the non-kosher food and that he had held it in his lap. Even accepting Berryman's contention that he had ordered the food for a non-Jewish inmate and his argument that he was fulfilling, rather than violating, his religious beliefs, *the defendants' determination that he had violated the prison rules was not unreasonable*. Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison.") (emphasis added).

38

In other words, the Court should agree with defendants Burnett and Martin that, "[a]lthough Plaintiff has presented evidence in support of his sincerity, the evidence is not so one-sided that he must prevail as a matter of law.  A reasonable jury could conclude that Plaintiff was not sincere in his belie[f]s and was instead seeking placement on the kosher meal program for some other secondary gain such as a transfer to a different facility, the opportunity to eat better food, etc.  Plaintiff's evidence might be sufficient to defeat a motion for summary judgment filed by Defendants, but it is not so overwhelming as to warrant summary judgment in Plaintiff's favor.  Should this Court determine that Defendants are not entitled to qualified immunity, this matter will need to be resolved by the trier of fact."  Doc. Ent. 65 at 4.

**d.      Plaintiff is not entitled to summary judgment on his RLUIPA claims.**

**I.**      As amended on December 11, 2010, plaintiff's RLUIPA claim against Burnett (¶¶ 45-56) and his RLUIPA claim against Martin (¶¶ 76-85) allege that defendants "failed to use the least restrictive means to determine Plaintiff's eligibility for a kosher diet."  Doc. Ent. 56 ¶¶ 51, 80; *see also* Doc. Ent. 56 ¶¶ 48, 77.

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) is codified at 42 U.S.C. §§ 2000cc - 2000cc-5.  In relevant part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Under the RLUIPA, a substantial burden must be more than an inconvenience on religious exercise. Rather, the challenged government conduct "must impose a significantly great restriction or onus upon such exercise." *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation omitted). In other words, "a 'substantial burden is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).

RLUIPA "does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). "Assuming that the Plaintiff's belief is sincere, prohibiting him from receiving the diet places a substantial burden on his religious exercise." *Madison v. Riter*, 240 F.Supp.2d 566, 569 n.2 (W.D. Va. 2003).[20]

**ii.**     In my February 10, 2009 report and recommendation, I noted with respect to the RLUIPA claim that "[w]hile the state may have a compelling state interest in restricting a kosher diet to those sincerely holding a belief in the Jewish faith and in providing a procedure for making this determination, there is no compelling state . . . interest in denying a kosher meal to a prisoner who, in fact, has a sincerely held religious belief requiring such a diet." Doc. Ent. 21 at 14.

---

[20]With respect to RLUIPA, this Court has recognized that "cases in which a substantial burden have been found involved a permanent prohibition." *Berryman v. Granholm*, No. 06-11010, 2007 WL 2259334, 3 (E.D. Mich. Aug. 3, 2007) (Friedman, J.) (referencing *Jesus Christ Prison Ministry v. California Department of Corrections*, 456 F.Supp.2d 1188 (E.D. Ca. 2006) (prison policy prohibited inmates from receiving religious literature from any unapproved vendor), *withdrawn pursuant to settlement* (Apr. 16, 2007); *Madison v. Riter*, 240 F.Supp.2d 566 (W.D.Va.2003) (inmate denied any participation in kosher meal program), *reversed on other grounds*, 355 F.3d 310 (4th Cir.2003); *Marria v. Broaddus*, 2003 WL 21782633 (S.D.N.Y. July 31, 2003) (inmate prohibited from receiving any literature pertaining to his religion or gathering with other members)).

**iii.**     In the instant motion, plaintiff argues that RLUIPA is violated.  *See* Doc. Ent. 63 at 25-27.  Plaintiff claims he "has pursued his faith practices in what appears to be the manner Defendants would expect to see in an individual of sincere belief."  He "repeatedly sought religious services, instruction, and literature, to no avail."  Doc. Ent. 63 at 26.

It is plaintiff's position that defendants "cannot demonstrate a compelling interest in denying the kosher diet to this inmate."  Plaintiff claims that defendants "justify their denials by criticizing Plaintiff's answers to the questionnaire, and by citing several year old data[,]" however, claims plaintiff, defendants "disregarded extensive evidence of Plaintiff's sincerity (including the recommendations and observations of three chaplains)."  Doc. Ent. 63 at 26.  Therefore, plaintiff claims that "Defendants cannot met their burden of establishing either a compelling interest or least restrictive means[,]" and "there is no genuine issue of material fact that Plaintiff's rights have been violated by Defendants' arbitrary rejections of his requests for a kosher diet." Doc. Ent. 63 at 27.

In conclusion, plaintiff contends, "Defendants cannot justify a compelling interest in denying a kosher diet to Plaintiff who is sincere in his beliefs."  Doc. Ent. 63 at 27.

**iv.**     Perhaps that is true.  However, not only do plaintiff's RLUIPA claims make use of the term "sincerely held," Doc. Ent. 56 ¶¶ 49, 52, 78 and 81, but also plaintiff himself states that "questions involving violations of RLUIPA permit inquiry into the sincerity of a claimant's beliefs[,]" Doc. Ent. 63 at 26 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)).  Furthermore, as I stated above with respect to plaintiff's First Amendment free exercise clause claim, I am not convinced that I should reach a conclusion different that I did on February 10, 2009 - that "genuine issues of material fact remain with respect to whether plaintiff's professed

41

religious beliefs are sincerely held and the reasonableness of defendants' conclusion that they were not sincerely held."  Doc. Ent. 21 at 13.

Therefore, the Court should conclude that plaintiff is not entitled to summary judgment on his RLUIPA claim.

**e.**   **Plaintiff is not entitled to summary judgment on his procedural due process claim.**

**I.**   Plaintiff's Fifth and Fourteenth Amendment procedural due process claim against both defendants (¶¶ 86-96) alleges that, "[h]ad he been asked or otherwise aware of these additional factors [whether a person has studied his faith, participated in religious services, sought religious materials], Plaintiff would have been able to provide documentation in support of his efforts to practice and study his Jewish faith, contemporaneously with his requests for placement on a kosher diet."  Doc. Ent. 56 ¶¶ 91, 94.  Plaintiff's due process claim further alleges that "[a]pplicants for kosher diet approval are thus not provided a fair opportunity to make a record that supports finding they are sincere in their beliefs." Doc. Ent. 56 ¶ 96.

"To establish a procedural due process claim, a plaintiff must demonstrate: 1) a liberty or property interest protected by the due process clause; 2) a deprivation of that protected interest within the meaning of the due process clause; and 3) defendants' failure to afford adequate procedural rights prior to the deprivation."  *Russell v. Wilkinson*, 79 Fed.Appx. 175, 178 (6th Cir. 2003) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

**ii.**   The Court should conclude that plaintiff is not entitled to summary judgment on his procedural due process claim.  To be sure, Russell's specific claim was that "the defendants discontinued his kosher meals without first informing him that his actions of not observing the

42

dietary requirements of his religion outside prison meals would lead to such a discontinuation." *Russell*, 79 Fed. Appx. at 178.

However, although Bonnell's procedural due process claim here is different, the Sixth Circuit stated that Russell did not "possess a constitutionally protected property interest in receiving kosher meals." In this regard, the Court explained, "[p]rison regulations allow an inmate to obtain such accommodations, but also place certain restrictions and availability on those accommodations. Ultimately, the decision to grant or deny an accommodation lies within the discretion of the prison warden." *Russell*, 79 Fed.Appx. at 178. Furthermore, the Sixth Circuit stated that "[t]he discontinuation of [plaintiff's] kosher meals did not affect the length or term of his imprisonment[,]" and "the discontinuation of the kosher meals did not amount to an atypical or significant hardship." *Russell*, 79 Fed.Appx. at 178.[21]

For these reasons, the Court should conclude that plaintiff is not entitled to summary judgment on his procedural due process claim.

## III.   **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

---

[21]This conclusion is buttressed by the United States Supreme Court's explanation that "[t]he validity of [a 42 U.S.C. § 1983] claim must . . . be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized . . . standard." *Graham v. Connor*, 490 U.S. 386, 394-295 (1989) (noting that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

(1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:8/10/11

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on August 10,  2011.

s/Eddrey Butts
Case Manager